UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| GARY STOCKS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 3:08-CV-415 CAN |
|  | ) |  |
| DR. ROSS and DR. ISRAEL, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**OPINION AND ORDER**

Gary Stocks is a *pro se* prisoner who alleged that Dr. Rachel Ross and Dr. John Israel denied him medical treatment for his muscular dystrophy. Despite those allegations, in response to the defendants' motion for summary judgment, Stocks has not demonstrated that either of them violated the Eighth Amendment. Therefore, summary judgment will be granted and this case will be closed.

**I.  PROCEDURE**

On September 25, 2008, the Plaintiff, Gary Stocks ("Stocks"), filed an amended complaint in this Court. On October 27, 2008, this case was screened pursuant to 28 U.S.C. § 1915A and Stocks was granted leave to proceed against Dr. Ross and Dr. Israel for a denial of medical treatment; other claims and defendants were dismissed. On November 12, 2008, Stocks filed a motion for a preliminary injunction which was denied on November 17, 2008. On February 20, 2009, upon the consent of the parties, this case was reassigned to the undersigned judge for all purposes. On April 27, 2009, the defendants filed a motion for summary judgment. On May 14, 2009, Stocks filed a response in opposition. On May 29, 2009, the defendants filed a

reply. This Court may now enter its ruling on all pending matters pursuant to the parties' consent and 28 U.S.C. § 636(c).

**II.    FACTS**

The following facts are primarily not in dispute. Where the facts are in dispute, this Court has determined that the disputes are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

Stocks has muscular dystrophy and is an inmate at the Westville Correctional Facility. Stocks arrived at the Westville Correctional Facility on February 8, 2008, and was seen by a nurse practitioner on March 10, 2008. He was also seen later by a nurse practitioner on June 11, 2008, September 12, 2008, and September 26, 2008, but he missed his June 12, 2008 appointment. He was seen by Dr. Rachel Ross on October 13, 2008.

Dr. Israel is the Health Care Administrator at the Westville Correctional Facility. He is not a medical doctor; he is a doctor of psychology. Dr. Israel was not one of Stocks' treating physicians and had no control over the medical evaluations or treatments of inmates. Rather, Dr. Israel was a prison administrator who processed grievances. He was aware that Stocks had a medical problem and that Stocks was dissatisfied with his treatment.

Dr. Ross is a medical doctor. In June 2008, Dr. Ross changed Stocks' dosage of Neurontin from 800 mg three times a day to 800 mg twice a day. She made this change "to safeguard against causing liver damage to the Plaintiff." In September 2008, Dr. Ross cancelled Stocks' cane pass because he had attacked a correctional officer.

**III.    ANALYSIS**

A.    Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the non-moving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Serv.s Co., 391 U.S. 253, 289 (1968)).

B.   Stocks May Not Expand the Issues in His Response Brief

In the screening order of October 27, 2008, Stocks was granted leave to proceed on his claims that he was denied medication as well as medical passes permitting him exemptions to institutional rules. See Doc. No. 9 at 3. Nevertheless, in parts of his response he attempts to expand this lawsuit to include unrelated subsequent matters concerning his leg braces and retaliation claims. Though he spends a significant amount of time discussing those matters,

Stocks was not granted leave to proceed on claims related to either leg braces or retaliation – therefore such claims are beyond the scope of this lawsuit. The summary judgment motion was properly directed only to the claims for which he was granted leave to proceed in this court's screening order, and Stocks cannot defeat it by attempting to add new claims in his response.

    C.    <u>Dr. Israel is Not a Medical Doctor</u>

Dr. Israel argues that Stocks cannot demonstrate that he had control over his medical care because he is not a medical doctor. Dr. Israel was "the Health Care Administrator at the Westville Correctional Facility . . . [and had] no control over the medical evaluations, decisions, and treatment received by the inmates, including Plaintiff, from their health care providers at the Westville Correctional Facility." Declaration of John Israel, Psy.D., Doc. No. 54-2 at 1-2. In the six issues identified by Stocks, he does not claim that Dr. Israel is physician. Though he argues that Dr. Israel "had access to plaintiff's medical packet to see plaintiff's complaints were real or not and rather [sic] or not plaintiff's health was at risk," he acknowledges that Dr. Israel is an administrator. Doc. No. 56 at 7.

Despite his title, Dr. Israel is not a medical doctor. Dr. Israel is the health care administrator at the Westville Correctional Facility who earned a doctor of psychology, but he is not a physician. As such, it was not within his authority to make medical decisions.

> Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

<u>Greeno v. Daley</u>, 414 F.3d 645, 656 (7th Cir. 2005) (citing <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3rd Cir. 2004)). As discussed later in this opinion, Stocks was under the care of Dr. Ross.

4

Though Dr. Israel's knew that Stocks was dissatisfied with Dr. Ross's treatment, as an administrator, Dr. Israel lacked the authority to review or change Dr. Ross' medical decisions.

The Seventh Circuit has specifically rejected the notion that mere knowledge of a medical condition by a person who lacks the authority to treat the medical condition is sufficient to support a deliberate indifference claim under the Eighth Amendment.

> Burks's contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, Monell's rule that public employees are responsible for their own misdeeds but not for anyone else's. Section 1983 establishes a species of tort liability, and one distinctive feature of this nation's tort law is that there is no general duty of rescue. DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189 (1989), shows that this rule applies to constitutional tort law, as to private tort law, for DeShaney holds that a public employee who knows about a danger need not act to avert it. . . . A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service.

Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009) (parallel citations omitted, brackets in original). So too here, Stocks can not establish a successful claim against Dr. Israel, even though Dr. Israel knew of Stocks objections to his medical care. Therefore, Defendants' motion for summary judgment, as to Dr. Israel, is **GRANTED**.

      D.      <u>Dr. Ross Was Not Deliberately Indifferent</u>

Dr. Ross is a medical doctor. Stocks alleges that she was deliberately indifferent to his medical needs, yet he has not produced evidence to support that claim.

The Seventh Circuit has stated that,

> For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.

Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted).

> Jackson was incorrect in his recitation of Williams's duty – medical professionals are not required to provide "proper" medical treatment to prisoners, but rather they must provide medical treatment that reflects "professional judgment, practice, or standards." There is not one "proper" way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

Id. at 697-698 (citations and quotation marks omitted).

Stocks contends that he should have been sent "out to Wishard Hospital to see his neurologist who diagnosed plaintiff with muscular dystrophy" and that he "needed to keep his Neurontin dosage at the level that his neurologist ordered . . . ." Doc. No. 59 at ¶¶ 1 and 2. See also Doc. No. 56 at 4, ¶ 14. He states that "If a plaintiff is in bad pain a doctor is suppose to do as the plaintiff wish." Doc. No. 58-2 at 3. This is simply incorrect. "Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care. [H]e is not entitled to the best care possible." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir.1997). "[S]ociety does not expect that prisoners will have unqualified access to health care . . . ." Hudson v. McMillian, 503 U.S. 1, 9 (1992). Rather, a prisoner is entitled to treatment that falls within the range of accepted practice. Here, Dr. Ross monitored Stocks condition as a chronic care patient, she recommended that he increase the amount of exercise he performed, she cancelled his cane pass after he attacked a guard, and she reduced his medication to prevent the possibility of liver damage. In response, Stocks states that this is a lie and that his medication dosage was later increased by another doctor, but he has presented no evidence demonstrating that these decisions by Dr. Ross were such that "no minimally competent professional would have so responded under those circumstances." Jackson at 698 (quotation marks and citation omitted).

Stocks argues that his "medication dosage was lowered along with hundreds of other inmates to save the facility money." Doc. No. 59 at ¶ 4. Though Dr. Ross acknowledges the Westville Correctional Facility did ask that medication not be dispensed three times a day "if possible," Doc. No. 54-3 at 2, she does not state that the reduction was medically inappropriate or that the cost of medication had any basis in the decision. Stocks has not presented any evidence that it was. "[M]ere speculation or conjecture will not defeat a summary judgment motion." Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co., 544 F.3d 752, 757 (7th Cir. 2008) (quoting McCoy v. Harrison, 341 F.3d 600, 604 (7th Cir. 2003)).

Stocks also contends that when he arrived at the Westville Correctional Facility, he was not given his Neurontin for five days. Doc. No. 56 at 4, and Doc. No. 58-2 at 1. In addition, Stocks contends that correctional officers forced him to sleep on a top bunk in February 2008. Doc. No. 56 at 4, ¶ 4 and Doc. No. 58-2 at 1. Stocks states that he was without Neurontin for 13 days in March 2008 and for 10 days in June 2008. Doc. No. 58-2 at 2; Doc. No. 56 at 4, ¶ 13. Stocks argues that various passes were either cancelled, not renewed or not issued during the spring and summer of 2008. Stocks states that he wrote health care requests about this issues. However, despite Stocks' assertions, Stock has not provided any evidence that Dr. Ross made a decision not to provide him with medication or that Dr. Ross was in any way involved in making him sleep on the top bunk in February 2008. Neither has Stocks submitted any evidence to suggest that Dr. Ross knew that he was without Neurontin in either March or June 2008. Further, Stocks has not submitted any evidence to show that Dr. Ross issued or cancelled any of Stocks' passes in the spring and summer of 2008. Instead, the evidence submitted by Stocks shows that other persons, besides Dr. Ross, were involved in those decisions.

7

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.,* the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted). Stocks speculates that Dr. Ross was involved in these events, but speculation is not an adequate response to a summary judgment motion. Rockwell Automation at 757. Because Stocks has not demonstrated that Dr. Ross had knowledge of and involvement with these events, he has not demonstrated that she was deliberately indifferent.

Stocks alleges that Dr. Ross lied in her declaration about why she cancelled his cane pass. Doc. No. 58-2 at 3. Stocks asserts that, in June 2008, Dr. Ross stated that she cancelled Stocks' pass because he hit a correctional officer with it. Stocks argues that, because the assault occurred two months after Dr. Ross' decision to cancel the pass, in August 2008, Dr. Ross' explanation for cancelling his pass were illegitimate. Despite Stocks' assertions, however, the evidence shows that Dr. Ross did not cancel Stocks' pass in June but, rather, on September 7, 2008. Doc. No. 54-2 at 3. Stocks is correct, however, that Dr. Ross justified the decision because she believed Stocks' had used the cane to strike a correctional officer. Id.

Stocks additionally assails Dr. Ross' justification for canceling his cane privilege by arguing that he attacked the correctional officer with his fist, not his cane. This is a distinction without a difference. The evidence shows that Stocks attacked a staff member by hitting him "in the face with a balled up fist [and] continu[ing] to strike . . . until he was sprayed with O.C.," necessitating, in Dr. Ross's mind, a restriction on Stocks' access to potential weapons like a cane. See e.g. Doc. No. 60-2 at 9. Based upon this evidence, unrebutted by Stocks, no

8

reasonable jury could determine that Dr. Ross' decision to restrict Stocks' use of a cane amounted to deliberate indifference.

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380 (2007). As presented, Stocks is telling two different stories, only one of which is supported by the record. Therefore, there is no basis for crediting his argument, made contrary to the record and his own sworn statement.

Because Stocks has produced no evidence that Dr. Ross was deliberately indifferent, this Court additionally **GRANTS** the motion for summary judgment, as to Dr. Ross.

### IV. CONCLUSION

Because Dr. Israel is not a medical doctor and because Stocks has not produced sufficient evidence upon which a reasonable jury could determine that Dr. Ross' medical decisions were deliberately indifferent, this Court now **GRANTS** Dr. Ross' and Dr. Israel's motion for summary judgment and awards costs. [Doc. No. 53]. The Clerk is instructed to term this case in favor of Dr. Ross and Dr. Israel and award costs.

**SO ORDERED**

**Dated this 21st Day of September, 2009.**

 S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge